UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
JESSICA DIAS,

                                           **MEMORANDUM & ORDER**
                                           **07-CV-5163 (NGG)(RER)**

                Plaintiff,

        -against-

COMMUNITY ACTION PROJECT, INC.
and PACIFIC INSTITUTE FOR
COMMUNITY ORGANIZATIONS d/b/a
PICO NATIONAL NETWORK,

                Defendants.
------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Jessica Dias ("Plaintiff" or "Dias") brings suit under Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL"), asserting claims of employment discrimination by Defendants Community Action Project, Inc. ("CAP") and Pacific Institute for Community Organizations ("PICO," together with CAP "Defendants").[1] Defendants have each moved to dismiss Plaintiff's Complaint. CAP argues that it cannot be liable under these anti-discrimination laws because it had fewer than the minimum number of employees required for those laws to apply. (See Memorandum of Law of Defendant CAP in Support of its Motion to Dismiss (Docket Entry # 17) ("Def. CAP Mem.") 1.) PICO argues that it cannot be liable

---

[1] Specifically, Counts 1, 2 and 3 allege discrimination and harassment on the basis of religion under Title VII, the NYSHRL, and the NYCHRL, respectively. Counts 4, 5 and 6 allege discrimination and harassment on the basis of national origin under Title VII, the NYSHRL, and the NYCHRL, respectively. Counts 7, 8 and 9 allege retaliation on the basis of her complaints and opposition to discrimination under Title VII, the NYSHRL, and the NYCHRL, respectively. In Count 10, Plaintiff alleges "intentional infliction of emotional distress," but this claim has been withdrawn. (See Plaintiff's Memorandum of Law in Opposition to Defendant CAP's Motion to Dismiss Plaintiff's Complaint (Docket Entry # 17) ("Pl. CAP Mem.") 19; Plaintiff's Memorandum of Law in Opposition to Defendant PICO's Motion to Dismiss Plaintiff's Complaint (Docket Entry # 23) ("Pl. PICO Mem.") 21.)

1

because it was never Plaintiff's employer. (See Defendant PICO's Motion to Dismiss (Docket Entry # 20) ("Def. PICO Mem.") 1-2.) In response, Plaintiff argues that CAP and PICO are either a single employer or joint employers and, therefore, that they can be held liable for discrimination under Title VII and the state discrimination laws. (See Pl. CAP Mem. 7-15; Pl. PICO Mem. 7-18.)

Although these motions have been brought as motions to dismiss, the court concludes that resolution under Rule 12(b) is inappropriate. As set forth below, Defendants' motions for lack of jurisdiction are DENIED, and Defendants' motions for failure to state a claim are CONVERTED into motions for summary judgment. The court will allow limited discovery and supplemental submissions on the threshold question of whether CAP and PICO are a single or joint employers.

## I. BACKGROUND

In reviewing a motion to dismiss, the court "accept[s] the allegations in the complaint as true." Boykin v. KeyCorp, 521 F.3d 202, 204 (2d Cir. 2008). According to Plaintiff's Complaint, she is "an Asian female," "not a [United States] citizen," and, although a "spiritual person[,]" "not subscribed to any particular . . . religion." (Compl. ¶¶ 9, 10.) Defendant PICO is a "national network of faith-based community organizations," while Defendant CAP is "a member of PICO engaged in a faith based organizing effort within the community of Flatbush, East Flatbush, Canarsie and surrounding communities." (Id. ¶¶ 17, 18.) In her Complaint, Plaintiff has alleged that PICO and CAP were each, and together, her "employer" under Title VII, the NYSHRL and the NYCHRL. (See id. ¶¶ 14-16.)

CAP and PICO are alleged to have employed Plaintiff as an "Executive Director" from November 2003 until September 2006. (Id. ¶¶ 14-16, 19.) In that role, Plaintiff was "responsible for many quality of life improvements made in the neighborhood of Flatbush

2

including measures on immigration and education." (Id. ¶ 20.) For example, Plaintiff lists as one accomplishment that she "initiat[ed] actions at St. Gabriel Epsicopal and St Catherine's . . . to secure traffic lights at two intersections. . . ." (Id. ¶ 47.) The Complaint also describes Plaintiff's responsibility for "reporting CAP's finances and achievements at the annual PICO directors' meeting each December[;]" and for "attending staff development trainings, hosting and participating in local New York meetings held by PICO." (Id. ¶ 21.) It describes the nature of Plaintiff's employment by detailing her professional interactions with various individuals from CAP, PICO and the local community. (See, e.g., id. ¶¶ 26, 27, 33, 39-40, 45, 51, 52, 57, 69, 71.)

At issue on these motions is the nature of Plaintiff's employment relationship with CAP and PICO. In CAP's motion to dismiss, it argues that it has just three employees and is, thus, not covered by Title VII (which requires an employer to have fifteen employees), nor the state discrimination laws (which require an employer to have four employees).[2] In PICO's motion to dismiss, it argues on various grounds that it was never Dias's employer, nor was it a "joint employer" along with CAP. (Def. PICO Mem 1-2, 3-9.)[3]

In response to Defendants' motions to dismiss, Dias argues that, although CAP itself has an insufficient number of employees to be covered by Title VII, CAP's employees can be aggregated with PICO's employees because the two entities constitute a single employer. (Pl. CAP Mem. 8-9.) Dias attempts to show that CAP and PICO are a single employer by reference to various factual assertions, as well as exhibits to her motion. (See Pl. CAP Mem. 9-15;

---

[2] See 42 U.S.C. § 2000e(b) (defining "employer" as having "fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year"); N.Y. Exec. Law § 292(5) (excluding "any employer with fewer than four persons in his employ"); N.Y.C. Admin. Code § 8-102[5] ("the term 'employer' does not include any employer with fewer than four persons in his or her employ").

[3] PICO argues for dismissal under 12(b)(6) on other grounds, but as the threshold number-of-employer issue appears to be preliminary to these issues, the court will not address these grounds here, and will allow PICO to renew these arguments after a ruling on the coverage issue.

3

Declaration of Michael J. Borrelli (Docket Entry # 17) ("Borrelli Decl."), Exs. B – E.)[4]
Regarding PICO, Dias argues the organization was her "joint employer," which, she argues, applies because PICO and CAP have "chosen to handle certain aspects of their employer-employee relationships jointly." (Pl. PICO Mem. 16 (internal quotation marks omitted).) The applicability of the single and joint employment theories is contested by CAP and PICO.

## II. DISCUSSION

### A. Single and Joint Employment

Standing alone, CAP has an insufficient number of employees for to be covered by VII. Dias argues, however, that CAP and PICO are a "single employer" for the purposes of Title VII. As the Second Circuit has explained, "[a] 'single employer' situation exists 'where two nominally separate entities are actually part of a single integrated enterprise. . . .'" Arculeo v. On-Site Sales & Marketing, LLC, 425 F.3d 193, 198 (2d Cir. 2005) (quoting Clinton's Ditch Cooperative Co. v. NLRB, 778 F.2d 132, 137 (2d Cir. 1985)). Under the single employer doctrine, "all the employees of the constituent entities are employees of the overarching integrated entity, and all of those employees may be aggregated to determine whether it employs fifteen employees." Id. at 199.

"[T]he policy underlying the single employer doctrine is the fairness of imposing liability for labor infractions where two nominally independent entities do not act under an arm's length relationship." Murray v. Miner, 74 F.3d 402, 405 (2d Cir. 1996). "That policy is most implicated where one entity actually had control over the labor relations of the other entity, and, thus, bears direct responsibility for the alleged wrong." Id. Courts have relied on a four-factor

---

[4] Dias also argues that CAP had four—rather than three—employees, and is therefore covered under the state discrimination laws. She argues that CAP's payroll indicates that a fourth employee was being paid. (Pl. CAP Mem. 15-18.) CAP explains that it was paying this person, but that the person was actually employed by another entity. (See Reply Memorandum of Defendant CAP in Further Support of Its Motion to Dismiss (Docket Entry # 17) ("CAP Reply") 6-8.)

4

test in determining whether two separate entities should be considered a single employer for the purposes of Title VII coverage, examining: (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control. See Cook v. Arrowsmith Shelburne, Inc., 69 F.3d 1235, 1240 (2d Cir.1995); Radio & Television Broad. Technicians Local Union 1264 v. Broad. Serv. of Mobile, Inc., 380 U.S. 255, 256 (1965). "Although no one factor is determinative, control of labor relations is the central concern." Marvelli v. Chaps Cmty. Health Center, 193 F. Supp. 2d 636, 653 (E.D.N.Y. 2002) (citing Murray, 74 F.3d at 404, and Balut v. Loral Elec. Sys., 988 F. Supp. 339, 344 (S.D.N.Y. 1997)).

The single employer theory offered by Dias relates to both Defendants' motions. With respect to CAP's motion, Dias will be unable to meet the threshold number of employees for application of Title VII unless CAP and PICO are considered a "single employer," and so she offers the single employer theory in support of meeting that minimum. With respect to PICO's motion, if Dias establishes that CAP and PICO are a single employer, then she will have established that PICO is covered under Title VII, because she will have established that PICO is part of the integrated entity that is Dias's employer. Accordingly, the single employer issue relates to both motions and, if satisfied, will defeat both motions.

Related to the "single employer" theory is the "joint employment" theory. "'A joint employer relationship may be found to exist where there is sufficient evidence that the respondent had immediate control over the other company's employees.'" Gargano v. Diocese of Rockville Centre, 888 F. Supp. 1274, 1278 (E.D.N.Y. 1995) (quoting NLRB v. Solid Waste Servs., Inc., 38 F.3d 93, 94 (2d Cir. 1994)). In contrast to the single employer theory, joint employment "assumes that [there] are separate legal entities, but that [those entities] handle certain aspects of their employer-employee relationship jointly." Arculeo, 425 F.3d at 198

5

(internal quotation marks omitted). To conclude that there is joint employment, relevant factors may include "commonality of hiring, firing, discipline, pay, insurance, records, and supervision." Solid Waste Servs., 38 F.3d at 94; Gore v. The RBA Group, Inc., No. 03-cv-9442 (KMK)(JCF), 2008 WL 857530, at *4 (S.D.N.Y. Mar. 31, 2008) ("[T]he Second Circuit has repeatedly recognized both the joint employer concept and the same factors cited in Solid Waste Services in analyzing a claim of joint employment.").[5] Under the "joint employment" theory, "only those persons actually jointly employed could be counted in addition to regular employees for aggregation purposes." Arculeo, 425 F.3d at 201 n.9.

The joint employer theory is raised only with respect to PICO's motion. Dias explains that this theory is not raised in order for the court to aggregate the two entities' employees. Instead, Dias argues that, in the event the court concludes that CAP and PICO are not a single employer, PICO should nonetheless be considered her joint employer. (See Pl. PICO Mem. 17-18 ("In the instant matter, Plaintiff does not seek to aggregate employees but merely [to] hold PICO liable as a joint employer.").) Accordingly, the joint employment issue is only raised in the PICO motion, and need only be considered should the court conclude that CAP and PICO are not a single employer.[6]

## B. The Parties' Positions on Single and Joint Employment

In responding to CAP's and PICO's motions to dismiss, Dias argues that CAP and PICO collectively constitute a single, integrated employer. She relies heavily on a "Memorandum of Understanding, Organizations in PICO Network" between CAP and PICO (the "Memorandum of

---

[5] The Second Circuit has not "yet fully analyzed or described a test for what constitutes joint employment in the context of Title VII," but has noted that "[t]he indicia suggesting a conclusion of joint employment may vary depending on the purpose of the inquiry." 425 F.3d at 200 n.7.

[6] Dias also argues that there is evidence that CAP, in fact, employed four employees, bringing the organization within the ambit of the state discrimination laws. This issue relates only to whether CAP has the four employees required for coverage under the state discrimination laws.

6

Understanding"), which, she argues, shows that CAP and PICO's operations are integrated (see Pl. CAP Mem. 9-12; Pl. PICO Mem. 11-12), that PICO had control of CAP's labor relations (Pl. CAP Mem. 12-14; Pl. PICO Mem. 13), and that CAP and PICO shared management and had the appearance of joint ownership (Pl. CAP Mem. 15; Pl. PICO Mem. 15). Among other things, the Memorandum of Understanding sets out PICO's responsibility for assisting in selecting CAP's director and staff, as well as training, development and support for CAP's staff. (See Memorandum of Understanding 1-2.) It also sets out a requirement that CAP adopt PICO's salary and benefit guidelines, solicit PICO's assistance in hiring, provide monthly reporting to PICO on financial and organizational matters, and adhere to restrictions on the use of PICO funds. (See id. at 2-3.)

Dias relies on PICO's website, which lists CAP as one of its "PICO federations" and describes CAP's community work. (See Borrelli Decl., Exs. B, C, D.) She also relies on other facts, unsupported by accompanying evidence, that PICO had authority over CAP employees, and was instrumental in her termination. (See Pl. CAP Mem. 13 (stating that PICO consultant had power to fire CAP employees); Pl. PICO Mem. 14 (stating that Plaintiff was terminated as a result of evaluations and decision by PICO).)

In response, CAP argues that the Memorandum of Understanding explicitly states that the organizations in the PICO network are separate and independent non-profit organizations. (CAP Reply 4.) CAP offers declarations from a former chairman of CAP's board of directors and the CAP Administrator setting out the ways in which CAP and PICO are separate entities. For example, the CAP Administrator states that CAP and PICO have separate accounting records, separate bank accounts, separate offices and workspace, and do not share lines of credit. (See Supplemental Declaration of Judith Tolbert dated June 5, 2008 (Docket Entry # 17) ¶¶ 4-8.) The

former CAP chairman states that CAP and PICO are separate entities, attaching CAP's incorporating documents, and setting out other ways in which the two organizations are separate. (See Declaration of Reverend Daniel Ramm dated June 2, 2008 (Docket Entry # 17) ¶¶ 3-11 & Exs. A, B.) For its part, PICO argues that the allegations in Dias's Complaint are insufficient to survive a motion to dismiss under Rule 12(b), and that "Plaintiff has not submitted any verified statements or affidavits attesting to facts which would indicate that PICO and CAP are a single employer." (PICO Reply 4.)

Regarding the joint employment theory, Dias also relies on numerous factual assertions that PICO and its employees—in particular its "counsel" and its Executive Director—exercised control over CAP employees. For example, Dias contends that PICO personnel were responsible for monitoring and evaluating CAP employee performance, as well as training, assisting and consulting with CAP staff. (Pl. PICO Mem. 16-18.) PICO responds that all of Dias' factual assertions relate to the training and consulting support provided by PICO, and that none suggests a "'commonality of hiring, firing, discipline, pay, insurance records and supervision.'" (PICO Reply 7-8 (quoting Solid Waste Servs., 38 F.3d at 94).) PICO also makes several arguments relating to the insufficiency of Dias' Complaint, arguing that it should be dismissed because it fails to plead facts sufficient to demonstrate a single or joint employment situation. PICO also argues that it never hired Dias, and that, because the single employer theory is only applicable in the context of parents and subsidiaries, the Complaint should be dismissed.

### C. Defendants' Motions for Lack of Jurisdiction Are Denied

Defendants bring their motions to dismiss, in part, under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-matter jurisdiction. The court denies these motions. The determination of Title VII's applicability based on the threshold number of employees is not

8

jurisdictional. As the Supreme Court has explicitly held, "the threshold number of employees for application of Title VII is an element of a plaintiff's claim for relief, not a jurisdictional issue." Arbaugh v. Y&H Corp., 546 U.S. 500, 516 (2006). This is true unless Plaintiff's claim regarding the number of employees is frivolous. See Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 366 (2d Cir. 2000) ("[T]he threshold number of employees for application of Title VII is not a jurisdictional issue, at least as long as a plaintiff . . . makes a non-frivolous claim that the defendant is a covered employer."); see also Arbaugh, 546 U.S. at 513 n.10.[7]

In order to be without jurisdiction, the court would have to conclude that Dias's claims under the joint and single employer theory are "so demonstrably without substance as not even to invoke jurisdiction under Title VII." Da Silva, 229 F.3d at 366 n.9. Based upon the allegations in the Complaint, along with the Memorandum of Understanding between CAP and PICO, the court concludes that Dias's reliance on the single and joint employment theories is not frivolous. Dias's Complaint alleges that PICO personnel were involved in the process leading to her termination and were ultimately responsible for that decision, and the Memorandum of Understanding sets out the various ways in which CAP and PICO have agreed to administer control over CAP's personnel, including hiring, training, and compensation. (See Memorandum of Understanding 2.) Although the court cannot conclude that Dias has established single or joint employment, it concludes that Dias's claim has sufficient substance to avoid a determination that she has not "even invoke[d] jurisdiction under Title VII." Accordingly, the court concludes that there is jurisdiction to hear Dias's case.

---

[7] The parties have made various submissions to the court relating to the single and joint employer issues. Under a motion for lack of jurisdiction, the court may consider these materials in resolving the jurisdictional question presented. Zappia Middle East Const. Co. Ltd. v. Emirate of Abu Dhabi, 215 F.3d 247, 253 (2d Cir. 2000). Doing so does not convert the motion to a motion for summary judgment. Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 n.8 (2d Cir. 2006) ("The presentation of affidavits on a motion under Rule 12(b)(1) . . . does not convert the motion into a motion for summary judgment under Rule 56.").

9

## D. Motions for Failure to State a Claim Not Appropriate for Coverage Issue

The Defendants also move for dismissal under Rule 12(b)(6) for failure to state a claim. PICO argues that dismissal is appropriate because Dias has failed to allege adequate facts supporting a joint or single employment theory. The court rejects this contention. There is no heightened pleading requirement for discrimination claims under Title VII, EEOC v. Thomas Dodge Corp., 524 F. Supp. 2d 227, 234 (E.D.N.Y. 2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510 (2002)), and the facts set forth in the Complaint plausibly suggest a degree of control and involvement by PICO in Plaintiff's employment. The court does not believe that Dias is required to plead specific facts establishing single or joint employment.

Indeed, the Second Circuit has observed that "ultimate failure to prove single employer status is not a ground for dismissing . . . for failure to state claim[.]" Da Silva, 229 F.3d at 365. As Judge Glasser explained in Rovira v. New York Apparel Sales, "in Da Silva, the Second Circuit stated that the fifteen-employee requirement of Title VII is not a ground for dismissing for . . . failure to state a claim,' 229 F.3d at 365; a motion under Rule 12(b)(6) is exactly that type of motion, i.e., a motion to dismiss for failure to state a claim." No. 01-cv-2231(ILG), 2002 WL 1471557, at *2 n.2 (E.D.N.Y. May 31, 2002); see also Fernandez v. M & L Milevoi Management, Inc., 357 F. Supp. 2d 644, 648 n.3 (E.D.N.Y. 2005).

PICO nonetheless argues that dismissal is appropriate because the single or joint employer theories are limited to the parent-subsidiary context or to sub-contractors. For support, PICO cites Gulino v. New York State Education Department, 460 F.3d 361, 378 (2d Cir. 2006), which states that the single or joint employer test "has been confined to two corporate contexts: first, where the plaintiff is an employee of a wholly-owned corporate subsidiary; and second, where the plaintiff's employment is subcontracted by one employer to another, formally distinct,

entity." Yet, Gulino "involv[ed] the complex relations between levels of government," and the Second Circuit declined to apply the test in those circumstances, particularly in light of constitutional concerns implicated by the involvement of such entities. Id. Rather than creating a bright-line rule, the court reads the quoted statement in Gulino as requiring district courts to "proceed with great caution in expanding [the single employer] test beyond the parent/subsidiary context[.]" Zhao v. State University of N.Y., 472 F. Supp. 2d 289, 314 (E.D.N.Y. 2007); see also Regan v. In the Heat of the Nite, Inc., No. 93-cv-862(KMW), 1995 WL 413249, at *2 (S.D.N.Y. July 12, 1995) (the burden of showing integration of operation "can be particularly difficult where . . . the plaintiff attempts to show not that a subsidiary is integrated with its parent, but rather, that several seemingly independent corporations should be considered as one"). The court declines to rule that the existence of a formal parent-subsidiary relationship or a sub-contract is a legal prerequisite to single or joint employment.

Although the court does not apply a bright-line rule, it is nonetheless aware that courts that have considered whether a non-profit and an umbrella organization were single or joint employers have concluded that they were not. See Woodell v. United Way of Dutchess County, 357 F. Supp. 2d 761, 769 (S.D.N.Y. 2005); Hall v. Delaware Council on Crime and Justice, 780 F. Supp. 241, 245 (D. Del. 1992); Walker v. Boys and Girls Club of America, 38 F. Supp. 2d 1326, 1331 (M.D. Ala. 1999); Webb v. American Red Cross, 652 F. Supp. 917, 919-22 (D. Neb. 1986); Tatum v. Everhart, 954 F. Supp. 225, 228-29 (D. Kan. 1997). All of these cases, however, were resolved on summary judgment, not under the Rule 12(b) standard, and the court concludes that, whether CAP and PICO are a single integrated enterprise, and whether PICO jointly employed Dias, are essentially factual questions that cannot be disposed of on a motion to dismiss. See Niland v. Buffalo Laborers Welfare Fund, No. 04-cv-0187F, 2007 WL 3047099, at

*6 (W.D.N.Y. Oct. 18, 2007) ("Whether two entities constitute a "single employer" is a question of fact.") (citing Lihli Fashions Corporation v. NLRB, 80 F.3d 743, 746 (2d Cir. 1996)); Clinton's Ditch Co-op Co., Inc. v. NLRB, 778 F.2d 132, 136 (2d Cir. 1985) ("Whether Clinton's Ditch possessed sufficient control over the Fairfield drivers to qualify as a joint employer is essentially a factual issue.") (internal quotation marks omitted). Accordingly, the court deems an inquiry under the summary judgment standard, not the 12(b) standard, the appropriate mechanism to resolve the parties' dispute.

### E.     Conversion to Summary Judgment

In this case, the most expedient course is to convert Defendants' motions to dismiss into motions for summary judgment and to allow supplemental submissions.[8] Although discovery has been stayed, both Dias and CAP have submitted limited documentary evidence in support of their respective positions regarding the threshold number-of-employees question. Under Rule 12(d), a motion to dismiss must be converted into a motion for summary judgment when matters outside the pleadings are considered by the court. Global Network Communications, Inc. v. City of New York, 458 F.3d 150, 155 (2d Cir. 2006) ("the conversion of a Rule 12(b)(6) motion into one for summary judgment under Rule 56 when the court considers matters outside the pleadings is strictly enforced and mandatory") (internal quotation marks omitted); see also Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). Court have deemed such conversion appropriate when factual materials have been submitted on the threshold fifteen-employee question. See Rovira, 2002 WL 1471557, at *2 n.4;

---

[8] CAP has specifically requested that, should the court conclude that the matter is not jurisdictional that it convert its motion to a motion for summary judgment. (CAP Reply 2 n.1.) PICO has not relied on matters outside of the pleadings, but it does argue that there is an absence of sufficient evidence to support the threshold number of employees for coverage. (PICO Reply 9-10.)

see also Pavel v. Plymouth Management Group, Inc., No. 02-CV-6195(NGG), 2005 WL 2659089, at *1 (E.D.N.Y. Oct. 18, 2005).

When a motion to dismiss is converted to a motion for summary judgment, however, "all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d); Sahu v. Union Carbide Corp., 548 F.3d 59, 67 (2d Cir. 2008) ("when a district court converts a motion to dismiss into one for summary judgment, all parties must be given a reasonable opportunity to present all the material that is pertinent to the motion") (internal quotation marks omitted). Because discovery has been stayed (see Docket Entry # 15), there has not yet been a reasonable opportunity for Plaintiff to "meet the proposition that there is no material fact to be tried" regarding the threshold issue. First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 115 (2d Cir. 1999). Accordingly, conversion is appropriate and additional discovery is needed to allow a full and fair opportunity to present material pertinent to a motion for summary judgment.

Discovery should proceed, however, only on the threshold issue of single or joint employment. Since this issue might be dispositive of the case—and the parties have taken time to brief it—the court deems it appropriate to resolve it before proceeding with the rest of the case. Accordingly, the court directs the parties to contact Magistrate Judge Reyes to set up a schedule for conducting discovery solely on single or joint employment. After such discovery, the parties will be permitted to supplement their papers and the court will consider the parties' arguments with the benefit of an opportunity for factual submissions.

## III. CONCLUSION

The court concludes that Defendants' motions to dismiss under Rule 12(b)(1) for lack of jurisdiction should be denied, and that their motions under Rule 12(b)(6) for failure to state a

claim should be converted into motions for summary judgment. In order to ensure that there has been an adequate opportunity for submissions on the existence of factual issues, the parties should **contact Magistrate Judge Reyes no later than March 11, 2009** to set up a schedule for limited discovery and supplemental submissions on the threshold issue of coverage under either the joint or single employer theory. When those submissions have been made, the court will consider Defendants' motions as motions for summary judgment.

SO ORDERED.

                                                                                             s/Nicholas G. Garaufis

Dated: Brooklyn, New York                          NICHOLAS G. GARAUFIS
March 4, 2009                                            United States District Judge